Rosenback *v.* Salt Springs National Bank.

sary to justify the entry of a judgment.' All the prelim-
inary steps may be supplied *nunc pro tunc.* (1 *Wend.* 314.)

I think the order should be reversed, and the appeal,
&c. restored.

Ordered accordingly.

[ONONDAGA GENERAL TERM, April 7, 1868.   *Foster, Mullin* and *Morgan,* Jus-
tices.]

SAMUEL ROSENBACK *vs.* THE SALT SPRINGS NATIONAL BANK.

The act of congress, approved February 25, 1863, entitled " An act to provide
a national currency," does not authorize the directors of a bank incorporated
under its provisions and in conformity with the act of the legislature of
this state, passed March 9, 1865, entitled " An act enabling the banks of this
state to become associations for the purpose of banking, under the laws of
the United States," to create, by a by-law, a lien in favor of the bank on
stock held by stockholders, for the security of debts due by them to the
bank.

A by-law declaring that no transfer of the stock of the association shall be
made without the consent of the board of directors, by any stockholder who
shall be liable to the association either as principal debtor or otherwise, if
not void because it provides for a forfeiture of stock, is void because, with-
out express authority, it attempts to impose a lien upon its stock.

The power to declare a lien upon stock, by means of a by-law, is not expressly
conferred upon the national banking associations, by the act of congress;
nor has it been incidentally or impliedly conferred upon them.   Yet the lien
may exist, if provided for in the articles of association.

THIS was an action to recover of the defendant damages
for its refusal to permit the transfer upon its books of
eighty-five shares of its capital stock, which stood on its
books in the name of one Henry Clay Barnes, and of
which the plaintiff had become owner. It was either
proved or admitted on the trial that a banking corporation
known as the Salt Springs Bank was created in the year
1852 under the general banking law of this state. On the

1st day of July, 1865, the said Salt Springs Bank become incorporated under the provisions of the act of congress of the United States, approved February 25, 1863, entitled, "An act to provide a national currency," and the several acts amendatory thereof, and in conformity with the provisions of an act of the legislature of this state, passed March 9, 1865, entitled "An act enabling the banks of this state to become associations for the purpose of banking under the laws of the United States."

On the 1st day of July, 1865, Ira Gage Barnes was the owner of 270 shares of the stock of the Salt Springs Bank, of the value of $100 per share, and for which certificates had been issued to him. On said last mentioned stock the defendant issued to him eighty-five shares of its stock in lieu of the same number of the Salt Springs Bank, which he surrendered on the receipt of the certificates issued by the defendant. On the 1st February, 1866, Ira Gage Barnes transferred these eighty-five shares to Henry Clay Barnes, and they have never been held or owned by said Ira since. After Henry Clay Barnes become owner of said shares he pledged them to Crouse & Co., to secure a loan of $8000. About the 20th June, 1866, said H. C. Barnes made a loan of $8000 of the plaintiff, and delivered to him these eighty-five shares as security, having paid the money borrowed of Crouse & Co. The plaintiff sold this stock on the 7th September, 1866, in order to pay the loan and became the purchaser at such sale. The plaintiff caused a demand to be made of the defendant to transfer said stock to the plaintiff, on the 17th July, 1866, and also in the months of August and September of the same year, which was refused. The value of the stock on the 17th July, 1866, was $105 per share. The defendant was not informed of the several transfers of the stock prior to the 17th July, 1866. On the 20th March, 1866, the defendant discounted a note for $2000 made by Henry C. Barnes, and indorsed by Ira G. Barnes, payable forty-five

days from its date in the city of New York. On the 3d May, 1866, this note was renewed, having the same parties upon it, and payable at the same time and place. This note was presented and protested at maturity, and suit commenced thereon, in which suit judgment was perfected September 1, 1866. On the 10th May, 1866, the defendant discounted a note for $5000, having the same maker and indorser, and payable sixty days from its date. On the 27th July, 1866, the defendant received from the assignees of H. C. Barnes $1750, and on the 20th August, 1866, $700, to apply, and these amounts were applied, on the aforesaid two notes. On the 1st January, 1867, the defendant declared a dividend of four per cent on its capital stock, and that is the only dividend remaining unpaid on the eighty-five shares of stock. The defendant had, prior to the 1st January, 1866, adopted the following by-laws:

"No transfer of the stock of this association shall be made without the consent of the board of directors, by any stockholder who shall be liable to the association either as principal debtor or otherwise."

This by-law was printed on the back of each certificate for stock issued by said defendant. The defendant never consented to the transfer of the stock in question.

The defendant had adopted the following by-law, which was in force at the time of the transfers of their stock in question:

"§ 15. The stock of this bank shall be assignable only on the books of the bank, subject to the restrictions and provisions of the act, and a transfer book shall be kept in which all assignments and transfers of stock shall be made. No transfer of the stock of the association shall be made without the consent of the board of directors by any stockholder who shall be liable to the association either as principal debtor or otherwise, and certificates of stock shall contain upon them notice of this provision."

On the 3d July, 1866, H. C. Barnes become insolvent, and on the 7th Ira G. Barnes was insolvent. · The defendant had no security for the notes, unless the stock became such under the by-law aforesaid.

. The cause was tried before Justice MORGAN, without a jury, who found the facts, substantially, as above stated; and he held as matter of law that the directors of the defendant had no power to pass the by-law in question, and that said by-law was in violation of that clause of the act of congress relating to the national banks, which forbade them to make any loan or discount on the security of the shares of its capital stock.

Judgment was ordered in favor of the plaintiff for the value of the stock, and from that judgment this appeal was brought.

*W. J. Wallace,* for the appellant.   I. The by-law of the bank does not contravene the law under which the bank was organized, and is within the incidental legislative powers of moneyed corporations.   1. The by-law is authorized by the "National Currency Act," and not inconsistent with any of its provisions.   The act of 1864, with amendments of 1865, provides that the directors of any association formed under that act "shall have power to define and regulate by by-laws the manner in which its stock shall be transferred."   (§ 8.)   The act also provides that "the capital stock of any association formed under this act shall be deemed personal property and transferable on the books of the association, in such manner as may be prescribed in the by-laws or articles of association," and "every shareholder shall succeed to all the rights and liabilities of the prior holder of such shares." (§ 12.)   The act thus recognizes certain "liabilities" which may be imposed by by-laws in regard to the transfer of stock. The foregoing are the only sections of the act in regard to by-laws and the transfer of stock.   2. The by-law is a

Rosenback *v.* Salt Springs National Bank.

reasonable one, and within the implied powers incident to the management of the affairs of moneyed corporations. Among these powers is the right to provide against transfers of stock by stockholders pecuniarily liable to the corporation. (*Leggett* v. *Bank of Sing Sing,* 24 *N. Y. Rep.* 283. *Angell on Corporations,* § 355. 12 *Ohio R., N. S.* 601 *McDowell* v. *Bank of Wilmington,* 1 *Harr. Del. R.* 27.)

II. The discounting by the defendant of the notes of Barnes was not, by reason of the existence of the by-law, a discount on the security of the shares of its own stock within the prohibition of section 35 of the national currency act. 1. It is conceded, as a matter of fact, that upon the discount no arrangement was made for any security but the notes themselves. 2. The intent of section 35 is simply to prevent discounts upon securities which would be worthless as assets in case of insolvency of the banks, and this case is not within the evil provided against. 3. By no reasonable construction can it be held that an ordinary discount, because incidentally affected by the by-law, is made upon the security of the by-law. More especially should such a construction be condemned when it renders an act illegal which is capable of an innocent interpretation. The by-law was enacted to protect the bank against other liabilities of stockholders than those arising from loans, such as unpaid assessments on the stock, &c. Its operation on a loan is merely incidental. 4. The discount was not on the security of the stock, because no " security," in the legal or ordinary sense of the word, was given to the bank by the by-law.. That cannot be termed a security for a loan which provides no way to enforce the payment of the loan. The by-law gives the bank no right of affirmative action to collect the loan from the stock. It does not give to the bank in regard to the stock any equity superior to that of the general creditors of the stockholder. The stock can not only be retained by the indebted stockholder, but its transfer can be com-

pelled by proceedings by its creditors, notwithstanding the by-law. The by-law only provides against a transfer by the stockholder himself, and it is no protection to the bank in a proceeding against him *in invitum.* (15 *John.* 278. 1 *Atk. R.* 219. 8 *T. R.* 57.)

III. If by any construction the discount, under the circumstances, was in contravention of the act, then Barnes was a party *in pari delicto.* The plaintiff, having no greater rights than Barnes, cannot ask the intervention of the court, and the rule *potior conditio defendentis* applies. It is not alone in cases *malum in se* that this rule applies, but it is equally applicable to acts contravening provisions imposed in restraint of corporations. (*DeGroot* v. *Van Duzer,* 20 *Wend.* 390. *East Anglian Railway Co.* v. *Eastern Co. R. Co.,* 7 *Eng. Law and Eq. Rep.* 505. *McGregor* v. *Official Manager of Deal and D. R. Co.,* 16 *id.* 505. *Mayor of Norwich* v. *Norfolk R. Co.,* 30 *id.* 120–144.)

IV. Barnes having no right to insist upon a transfer of the stock, his assignee, though for value, has no better rights, and is subject to the same disabilities. (*Stebbins* v. *Phenix Ins. Co.,* 3 *Paige,* 350. *Commercial Bank of Buffalo* v. *Kortright,* 22 *Wend.* 348. *Leggett* v. *Bank of Sing Sing,* 24 *N. Y. Rep.* 283–293.)

*William C. Ruger,* for the respondent. I. In the absence of the by-law in question, the refusal of the defendant to transfer the said stock upon the books of the bank and issue new scrip therefor, was a conversion of the stock entitling the plaintiff to bring and maintain this action. This was held in this state in *Leggett* v. *The Bank of Sing Sing,* (24 *N. Y. Rep.* 292,) and *Arnold* v. *The Suffolk Bank,* (27 *Barb.* 424.) The delivery of the scrip indorsed by the shareholder in blank upon the back thereof is a valid transfer of the stock, and authorizes any subsequent holder to write out the assignment over the name. (22 *Wend.* 348. 20 *id.* 91. 4 *Duer,* 1 *to* 20.) A transfer without

registry is good, and passes the title. (2 *Cowen,* 770. 8 *id.* 398.)

II. The existence of the by-law in question did not create a lien in favor of the defendant upon said stock for the amount of Ira Gage Barnes' indebtedness to the defendant, for the reason that the same was in conflict with, and is prohibited by, the 35th section of the general banking law, under which the defendant was organized. The section is as follows: "No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith." And stock thus acquired shall be sold within six months, or a receiver may be appointed, &c. It will be seen that the defendant is hereby not only prohibited from making any loan upon the security of its own shares, but also from being the purchaser or holder of such shares, unless such security or purchase is necessary to prevent loss upon a debt contracted previous to such purchase.

III. The by-law in question furnishes no defense to this action, for the reason that the board of directors of the defendant had no power to confiscate or forfeit the stock of their shareholders for the non-payment of a debt. In all the cases arising in this state where a lien has been created upon stock for the debt of a shareholder, in favor of a bank, the provision whereby it was done was incorporated in the articles of association signed by the shareholder. (24 *N. Y. Rep.* 284. 27 *Barb.* 424. 3 *Paige,* 361.) It was thus, by virtue of an express contract between the parties to the transaction, created a lien. The power to make by-laws is conferred by section 8 of the laws of congress, passed June 3, 1864, and is to the effect that they "may define and regulate by by-laws, not inconsistent with the provisions of this act, the manner in

which its stock shall be transferred," &c.   By section 12 of the same act, the "stock is made personal property, and is transferred on the books of the bank in such manner as may be prescribed by by-laws.   The power conferred upon a corporation to make by-laws, is a power to regulate the internal and domestic affairs of the corporation, but confers no power to affect the rights and liabilities of third persons by by-laws.  (19 *John.* 115.   26 *Barb.* 595.)  " The declaration that the shares of the association shall be deemed personal property, and transferable on the books of the association in such manner as may be agreed on in the articles of association, refers to the *modus operandi* of transfer, and not to the right of transfer, or to any restrictions upon such right."  (24 *N. Y. Rep.* 288, *per Allen, J.*)   But this question has been expressly decided in this state.   The general power to make by-laws not inconsistent with law, does not authorize a coporation to make by-laws subjecting stock to forfeiture for non-payment of installments; they must have express power to do this.   (19 *Wend.* 37.)   The statute, act of congress, passed June 3, 1864, section 15, confers upon corporations formed under that act the power to forfeit stock for non-payment of installments, and that is the only case in which a forfeiture of stock is authorized.

IV.  The by-law in question furnishes no defense to this action, for the reason that by its terms it does not apply to the stock in question.  ·This stock was transferred on the 1st day of February, 1866, and Ira Gage Barnes did not become indebted to the bank until in March and May following; so that at the time of the transfer he was not a debtor of the bank.

*By the Court,* MULLIN, J.   By section 192 of the general banking law of this state, it was provided that the shares of said association should be deemed personal property, be transferable on the books of the association in such

manner as might be agreed on in the articles of association, and every person becoming a shareholder by such transfer should, in proportion to his shares, succeed to all the rights and liabilities of prior shareholders.

The associations created under said act were, for almost all purposes, corporations, and the general provisions of the Revised Statutes relating to corporations applied to them, and one of the provisions thus applied empowered such associations to make by-laws not inconsistent with any existing law, for the management of their property, the regulation of their affairs, and the transfer of their stock.

It was held in *The Bank of Attica* v. *The Manufacturers' and Traders' Bank,* (20 *N. Y. Rep.* 501,) that a delegation by the articles of association to the directors, of the general powers of the association and the management of its stock, does not authorize a by-law subjecting the stock to a lien in favor of the bank for the indebtedness of the stockholders ; and it was further held, that a purchaser for value, without notice of such a by-law, had an equitable title to the stock, free from the lien of the bank.

But when the articles of association provide that the shares of its stock shall not be transferable until the shareholder shall discharge all debts due by him to the association, the association thereby acquires a valid lien on the stock as against an assignee who takes it with knowledge thereof. (*Leggett* v. *The Bank of Sing Sing,* 24 *N. Y. Rep.* 283.)

It was held in *Arnold* v. *The Suffolk Bank,* (27 *Barb.* 424,) that when the articles of association provided for a lien upon stock until the shareholder's debt to the bank was paid, such a lien was valid, and bound the stock.

If the case in hand had arisen under the general banking law of the state, it cannot require argument to show that the defendant had no lien on the plaintiff's stock. The lien insisted on is created by a by-law, and not by

the articles of association; so that within the principles of the cases cited, there was no valid lien upon the stock ever created.

The defendant is created under the act of congress, and not under the state law; and it remains to inquire whether the provisions of that act authorize the directors to create a lien in favor of the bank on the stock held by the stockholders for the security of debts due by them to the bank.

The first act passed by congress providing for the cre-. ation of banking associations was passed in 1863, and approved on the 25th February in that year. That act was repealed in 1864, and another act passed, providing for the incorporation of these associations, in 1864, and was approved June 3d of that year.

It will not be necessary to refer to any of the provisions of the former act, except section 36, which provided that no shareholder should have power to sell or transfer any share of stock held in his own right so long as he should be liable, either as principal debtor, surety or otherwise, to the association for any debt which should have become due and remain unpaid; nor should any such stockholder receive any dividend so long as such liabilities should continue; and no stock should be transferred without the consent of a majority of the directors, while the holder thereof was indebted to the association. This clause was not incorporated in the new act, and hence the power to subject stock to a lien in favor of the bank, as security for debts due from the person holding it, to the bank, must be looked for in some other clause or section of the act.

The 5th section of the act of 1864 provided that asso- ciations for carrying on the business of banking may be formed by any number of persons, not less than five, who shall enter into articles of association which shall specify in general terms the object for which the association is

Rosenback *v.* Salt Springs National Bank.

formed, and may contain any other provision, not inconsistent with the provisions of said act, which the association may see fit to adopt for the regulation of its business and the conduct of its affairs.

Section 8 provides that the associations formed under said act shall be bodies corporate, and shall have a corporate seal, succession, make contracts, sue and be sued as fully as natural persons, elect or appoint officers, and exercise such incidental powers as shall be necessary to carry on the business of banking. The directors have power to define and regulate by by-laws not inconsistent with said act, the manner in which its stock shall be transferred, its officers elected or appointed, its property transferred, its general business conducted, and all the privileges granted by said act exercised and enjoyed.

By section 12 the capital stock is declared to be personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association; and every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares.

The more important provisions of the act of 1864, above cited, are substantially the same as those contained in the banking law of our state. And in the absence of any construction of those provisions by the courts of the United States, we must follow that of our own courts.

Applying to these provisions the principles settled by our courts, we must hold:

1st. That unless the act of congress or the articles of association expressly authorize the directors of a banking association by a by-law to make the stock of any of its stockholders subject to a lien in favor of the bank, as security for a debt due by him to the bank, no such lien can be thus created.

2d. No such power is expressly given; and that it was

not intended to be given is fairly inferable from the omission to re-enact, in the act of 1864, the clause of the act of 1863, which expressly gave the bank such a lien.

The general power to pass by-laws does not embrace that of creating liens and through the lien a forfeiture. The lien would be worthless unless it could be enforced, and the necessary consequence of enforcing it is a sale of this stock and consequent loss of it to the owner.

Now corporations cannot pass by-laws which impose a forfeiture. (*See cases cited in the opinion of the court, in the matter of the Long Island R. R. Co.,* 19 *Wend.* 37.) In that case the railroad company had, as I infer from the opinion, passed a by-law declaring forfeited the stock of such of its stockholders as should, after notice, fail to pay installments due upon such shares. The court held that, in the absence of express authority to pass such a by-law, none existed, and the forfeiture was void.

But if I am wrong in supposing that the by-law of the defendant is void because it provides for a forfeiture of the plaintiff's stock, it is nevertheless void because without express authority it attempts to impose a lien upon its stock. (*Bank of Attica* v. *The Manufacturers' Bank, cited supra.*) It is said in that case, and in *Leggett* v. *Bank of Sing Sing, (supra,)* that had the power to impose a lien been contained in the articles of association, it would have been valid. We do not know what is contained in the articles of association, as they are not before us, but it is reasonable to infer that if they contained such a power they would have been produced.

The power to create a lien not being expressly conferred by the act of congress nor by the articles of association, it only remains to inquire whether it is impliedly conferred in any of these provisions of the act of congress which confer other or different powers on the associations than is conferred by the general banking law of the state. Before entering upon the inquiry, it may be proper to

Rosenback *v.* Salt Springs National Bank.

acertain the intentions of the state and national legislatures in framing the laws under which these banking associations were and are created, and the powers which it was intended to confer upon them.

The legislature that passed the general banking law in 1838 were met, at the very outset of the efforts to establish a new system of banking, by constitutional provisions (§ 9 *of art.* 3 *of the Constitution of* 1822) requiring the assent of two-thirds of all the members elected to the legislature to every law creating, continuing or altering a corporation. A majority only could be procured; hence it became indispensable that an act which was to bring into being an indefinite number of associations for banking purposes should be so framed as to deprive them, as far as possible, of the powers usually conferred on coporations, and yet clothe them with such powers as were necessary to enable them to perform the duties which must necessarily devolve on banking institutions. Hence we find that the act does not in terms confer on the associations to be created under it any of the powers of corporations. It gives them only such powers as are absolutely necessary to carry on their business, and as necessarily incident to it they become clothed with others, and indeed with all the usual powers belonging to corporations. In a word, the act was a mere evasion of the constitution. The Supreme Court uniformly held these associations to be corporations. But the Court of Errors, pressed by the mischiefs which would result from declaring them illegal, held them not to be corporations, withing the meaning of the constitution. Nevertheless, that court held them to be corporations whenever a question as to their character was before it. As the act was silent as to the powers which it was intended that these associations should exercise, and as the articles of association which the stockholders were required to file in order to bring the association into existence, might contain any provision

not inconsistent with the constitution or laws that those framing them might desire to insert therein, these articles, instead of the act, became the charter, and the courts held they might lawfully exercise powers given by the articles, although not enumerated in the general act. It was doubtles on this ground that the Court of Appeals held that a lien on stock was created in favor of the association when the articles provided for it. The articles being in effect a contract between the stockholders, it was right to hold them bound thereby, although the law creating the corporation conferred on them no power to make any such contract.

Congress encountered no constitutional obstacle in its way in the passage of the law under which the national banking institutions are created. It intended to create institutions substantially like those created under our banking law. The act of congress of 1863 was, in all its national provisions, like ours, except that its 8th section expressly conferred upon the associations certain powers usually conferred on corporations, such as the power to have a common seal, succession, &c.

The 5th section of the act of 1864 permitted those who filed articles of association to incorporate therein, in addition to the matters required by the act of 1863, any other provisions, not inconsistent with the provisions of said act, which the association may see fit to adopt for the regulation of its business and the conduct of its affairs. No such provision as this was contained in our banking law, and could not be, without subjecting the act, instantly, to the constitutional prohibition.

It cannot be denied, in view of the provisions of the acts of congress above referred to, but that congress intended to create, and has created, bodies corporate, nor but that those bodies are clothed not only with the powers expressly conferred, but also with such others as are necessary to carry into effect those which are thus conferred, and to

them may, perhaps, be added certain incidental powers which belonged at common law to all corporations, unless expressly withheld by their charter.

I come now to the question suggested above, viz., whether the power to declare a lien upon stock by means of a by-law has been incidentally or impliedly conferred on the national banking associations.

The 5th section of the act of 1864 authorized, as I have shown, the incorporation into the articles of association of any other provisions not inconsistent with said act, which the association might see fit to adopt for the regulation of its business and the conduct of its affairs. This provision is broad enough to authorize the creation of a lien in favor of a bank upon the stock of its debtors. According to the case of *Leggett* v. *The Bank of Sing Sing*, such a lien might be created by the articles without any provision authorizing it in the general law. But the articles contain no such authority, and hence the provisions of the 5th section do not aid the defendant.

The 8th section provides that the board of directors shall have power to define and regulate by by-laws, not inconsistent with the said act, the manner in which its stock shall be transferred, its general business conducted, and all the privileges granted by the act exercised and enjoyed. The authority to regulate the manner of transferring the stock does not embrace the power to create a lien upon it. If it did, then the state banks would have had the power, as the general banking law conferred the same power on the directors of the association. But it is settled that they acquired no such power, under this clause. Indeed, the clause under consideration was never designed to confer any such authority. It is of the highest importance that a corporation should know who are its stockholders, in order that they may be able to pay dividends to the real owner of the stock, but, also that they may

know who are entitled to vote at elections, hold the office of directors and contribute in case of loss. These ends can only be attained by enabling the corporation to regulate the manner of transferring the stock. This was the sole object of the clause of the act to which I have referred.

The same section declares that the by-laws may regulate the manner in which its *general business shall be conducted.* Argument cannot be required to show that this clause does not embrace the power to create a lien on stock. Such a power has no connection with the general business of the corporation. It applies to a very limited class of cases, and to a very small share of the business of the bank, if its affairs are conducted in conformity to the general law.

The section next authorizes by-laws to regulate the manner in which all privileges granted by the act shall be exercised and enjoyed. This does not contain the grant of any new power, except the power to make by-laws in relation to powers expressly granted by the act, or powers which are necessary to carry into effect such express powers, as the power to create a lien on stock has not been conferred by any of the other provisions of the statute. This clause does not profess to authorize a by-law to be made in reference to it.

We have, then—1st. The act of congress creating these associations, almost identical with an act of our own legislature, which last mentioned act our own courts have held does not confer on these associations the power to create by by-law a lien on the stock of a stockholder indebted to it. 2d. A provision in the act of congress of 1863, declaring such a lien is repealed and omitted from the subsequent act of 1864. 3d. No such power is expressly conferred in the act of 1864, nor does it contain any provision which, fairly construed, confers any such power. 4th. The by-law would tend to work a forfeiture, and is

not, therefore, such an one as the association could adopt under the power which corporations have at common law to pass by-laws.

For these reasons, I am of the opinion that the by-law creating or declaring the lien is void, and furnishes no justification to the defendant for refusing to transfer to the plaintiff the stock in question.

It is not necessary to examine the other question presented by this appeal, viz., whether, if such a lien existed, a loan to a stockholder would not be a loan on the security of the shares of its own stock, and therefore a violation of the 35th section of the act of 1864, which forbade such a loan.

If the authority was conferred upon the association to declare such a lien by by-law, it would not be in violation of section 35. That section, as well as the one conferring the authority to declare the lien, must, in that event, be so construed as that both shall have effect; and as that could only be done by applying section 35 to express pledges of stock as security for loans, the section would be so construed. Congress must have intended that the two provisions could stand, as in the act of 1863 it expressly gave the bank a lien on the stock for debts due by the stockholders, but forbade them to loan on the security of their own stock. I do not perceive, therefore, that any light can be drawn from section 35.

If I was called on to construe that section separated from all other provisions of the act, I should be of opinion that a loan by an association upon shares of its own stock as security, however a lien upon it as security might be obtained, was forbidden. But as it has been held that such a lien may be obtained if provided for in the articles of association, it would follow only that such a lien cannot be created by by-law, and the section must, therefore, be

Rosenback *v.* Salt Springs National Bank.

construed as if it contained the exception of liens created by the articles of association. For these reasons, I am in favor of affirming the judgment.

Judgment affirmed.(*a*)

[ONONDAGA GENERAL TERM, April 7, 1868. *Foster, Mullin* and *Morgan,* Justices.]

(*a*) The reporter has been furnished with a note of another case involving the same question discussed in the foregoing opinion, which was decided by the same court at the general term in June, 1869 :

LUTHER H. CONKLIN and DEWITT C. PECK, assignees of James S. Chandler,, respondents, *vs.* THE SECOND NATIONAL BANK, appellant.

In·this case the indebtedness against Chandler did not arise out of loans or discounts made upon the security of his bank stock, but was for a balance on an account current, and mostly for moneys received by Chandler, who was a, banker, upon checks, drafts and notes sent to him for collection. The defendant's bank claimed to have a lien upon his stock as security for this indebtedness, by force of a by-law of the directors creating such lien, notice of which was indorsed upon the certificates of stock.

MORGAN, J. The decision in *Rosenback* v. *The Salt Springs National Bank* seems to control this case. The opinion, in which I concurred, placed the judgment solely upon the ground that the directors had no authority to create a lien upon the capital stock for debts due from the stockholders to the corporation, unless such authority was expressly conferred by the articles of association. In the case at bar, the articles of association give no such authority to the directors, nor is any such power conferred upon them by the act of congress. The defendant's bank claims to hold Chandler's stock as security for his indebtedness, by force of a by-law of the directors, creating a lien, of which notice is indorsed on the certificates of stock. This claim cannot be distinguished from that set up by the Salt Springs National Bank in the case of *Rosenback.* It is true, the judgment of the special term in the case of *Rosenback* was put solely upon the ground that the debt of Barnes grew out of paper discounted by the bank, on which he was indorser, and that the by-law relied upon as creating a lien upon his stock as security for such debt was within the prohibition· of the 35th section of the act of congress. (15 *U. S. Stat. at Large,* 110.) I think the judgment of the special term might with propriety have been affirmed upon that ground; but the opinion of Mr. Justice MULLIN put the judgment of affirmance upon other grounds, decisive of the case at bar, in which I concurred. I am of the opinion that we ought to affirm this judgment upon the authority of that case.

BACON and MULLIN, JJ., were for affirmance.

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

FOSTER, J., dissented, and stated that he concurred in the judgment in the case of *Rosenback* v. *The Salt Springs National Bank* solely upon the ground that the lien claimed in that case was within the prohibition of the act of congress. As the indebtedness of Chandler did not arise out of any loans or discounts within the prohibition of the 35th section, he was of opinion that the lien claimed by the bank should be adjudged valid.

Judgment affirmed.