Kate Cusick, Appellant, v. James H. Langan et al., Appellees.

## Gen. No. 5381.

1. INTEREST—*money collected under mistake of law.* If executors collect rent under the belief that they are entitled so to do, and do not use it for their own benefit, they are not chargeable with interest for a failure to turn it over to the party entitled thereto where such party did not object to the collection of such rent by such executors.

2. WILLS—*how construed.* If the language of a will is susceptible of two constructions, one of which will dispose of the testator's entire estate and the other would leave him intestate as to a part of his property, the courts will, if reasonably possible, adopt such a construction as will prevent intestacy as to any portion of the estate.

3. WILLS—*phrase "due at the time of my death" construed.* Held, in this case, that the words "due at the time of my death" did not mean only "matured at the time of my death," but were the equivalent of the phrase "owing at the time of my death," regardless of maturity. Any other construction would have resulted in partial intestacy.

Objections to executors' report. Appeal from the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed October 18, 1910.

R. S. McILDUFF and B. R. THOMPSON, for appellant.

H. K. & H. H. WHEELER, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

James Langan died on October 8, 1903, leaving surviving him a widow, two sons, Thomas N. Langan and James H. Langan, and two daughters, Mary Mullaney and Kate Cusick. He died possessed of a homestead in the city of Kankakee; of over one thousand acres of land in the counties of Kankakee, Iroquois and Livingston, worth over $100 per acre; his household goods in his residence; a small sum of money; and certain contracts for the conveyance of other lands by him upon the payment to him of certain sums of money,

the time for which payments had not arrived when he died. He left a last will and two codicils thereto, which were duly admitted to probate. By his will he gave his wife the use of the homestead and the household goods, with remainder to Mary Mullaney. He devised all his other land, which he owned when the will was made, to his children, giving some lands to a child in fee and other lands to a child for life, with remainder to his or her children, either share and share alike or as appointed by each daughter in her will. He gave certain moneys for masses, for burial vault, for a monument. The eighth paragraph of the will was as follows: "After the payment of the legacies and the sums of money herein mentioned, I give to my beloved wife, all money, notes, or obligations of any kind, that may be due at the time of my death, to be hers absolutely." The first codicil gave his wife the use of certain of the real estate for her life, and directed his executors from the first moneys that came into their hands to pay off a certain mortgage of $8,000 so as to clear up the lands covered thereby which he had previously willed to Mrs. Cusick. The original will was made on November 20, 1899. In the fall of 1901 the testator bought these other lands. He paid for the same and received a deed in February, 1902, and to obtain the money paid therefor executed said mortgage for $8,000 upon the lands he had willed to Mrs. Cusick. Before he obtained the deed he had entered into a contract to sell a part of this newly purchased land to one Koon upon certain successive payments for five consecutive years thereafter. It is evident that he expected to sell the rest of this recently purchased land soon, for in his first codicil, executed in April, 1902, he did not devise or mention it. In December, 1902, he made a contract to convey the rest of said newly purchased lands to one Willets, partly for cash, and the balance in ten equal annual payments. Both contracts carried interest on the deferred payments. The second codicil is not material to this case.

Such proceedings were had that prior to the origin of this litigation the purchase price under the contracts with

Koon and Willets was paid to the executors in full. Before his death the testator had leased various tracts of land for a period running beyond the date of his death, and the second installment of rent for the last year had not become payable when the testator died. The executors collected, not only the rent which had matured and was unpaid at the testator's death, but also the rent which matured after his death for the remainder of that rental year. From these various sums the executors paid the claims and expenses of administration, and said $8,000 mortgage resting on the lands of Kate Cusick; and they filed a final report in the county court showing a balance on hand of $7,633.92, and reported that, after deducting therefrom such sums as still might be due the executors and their attorneys, the balance was payable to Catherine Langan, the widow. To this report Kate Cusick filed forty objections, and from an adverse decision upon certain of said objections she appealed to the Circuit Court. All matters in dispute were there eliminated except two questions, decided adversely to her, and from the final order in that court Kate Cusick prosecutes this appeal.

Appellant contended that the rents which matured after the testator's death upon the lands devised to her became her property at the testator's death; that the executors had no right to collect the same; and that those moneys should be paid to her by the executors. The court below so held, and ordered $805 of that rent money paid to her; and, although the other devisees have not asked to have their rent refunded, yet no cross errors have been assigned, and her right to said rents is conceded. But she contends that she is also entitled to interest on this rent from the time when it was paid to the executors. The court denied her claim for interest, and that ruling is assigned for error. It is evident that the executors collected this rent under the belief that it belonged to the estate. There is no proof that appellant ever sought to compel the tenants to pay it to her. It is a fair inference either that she also believed at the time that it belonged to the executors, or else that she consented that

they should collect it.   There is no proof that the executors
used the money for their own benefit, nor that appellant
ever demanded the money of the executors, or ever claimed
the money till she filed objections to their final report.   This
was not an unreasonable and vexatious delay of payment
within the meaning of those words in section 2 of our statute
in relation to interest, nor was there any tortious or fraudu-
lent act in the collection of this rent.   Under the principles
laid down in Whittemore v. People, 227 Ill. 453, 474, ap-
pellant was not entitled to such interest.

The moneys remaining in the hands of the executors,
after paying the debts and costs and said mortgage and
refunding the rents to appellant, arose from payments made
by Koon and Willets, respectively, to the executors under
said land contracts, and were payments which had not ma-
tured under the terms of said contracts at the testator's
death.   Appellant contends that they therefore were not
"due" at the time of testator's death and therefore did not
pass to the widow under the eighth paragraph of the will,
above set out, but, there being no residuary clause in, the
will, were intestate estate, which should be divided between
the widow and the heirs at law, under the statute.   The
court below denied this contention and ordered the residue
of said moneys paid to the widow.   This ruling is assigned
for error.   The amount involved is about $6,000.

The vital question is whether the words "due at the time
of my death" in the will mean "matured at the time of my
death," or merely "owing at the time of my death."   The
unabridged dictionaries, law dictionaries, encyclopedias of
the law, and legal text books generally, while giving the
popular use of the word "due" as meaning that the time fixed
for payment has arrived, yet also give a broader signification
of the word, applying to any debt which is owing, whether
the time fixed for payment has or has not arrived.   There
are cases in many jurisdictions, where under the circum-
stances of the particular case the latter meaning has been
adopted by the courts.   Among them are United States v.
State Bank, 6 Peters 29, 36; Leggett v. Bank of Sing

Sing, 24 N. Y. 283; Mason v. Mason, 67 Me. 546; Sand
Blast Co. v. Parsons, 54 Conn. 310; Scudder v. Scudder,
10 N. J. Law 340; Fowler v. Hoffman, 31 Mich. 215; People
v. Vail, 6 Abb. N. C. (N. Y.) 206; Elkins v. Wolfe, 44
Ill. App. 376. The court is required to determine in which
sense the testator used the words "due at the time of my
death" in the eighth paragraph of his will. A man who
has taken the trouble to prepare a will is presumed to have
intended to die testate as to all his property, unless the
contrary appears. When the language of a will is suscep-
tible of two constructions, one of which would dispose of his
entire estate, and the other would leave him intestate as to
a part of his property, the courts will, if reasonably possible,
adopt such a construction as will prevent intestacy as to
any portion of the estate. Connor v. Gardner, 230 Ill. 258.
The testator did not otherwise dispose by will of the moneys
due him under these contracts, nor did the will contain any
residuary clause. If the construction contended for by
appellant is adopted the testator died intestate as to those
moneys. The construction urged by appellant would make
the question whether the will disposed of those moneys to
depend upon the particular day when the testator died.
Every man knows that the day of his death is uncertain. We
think it would be unreasonable to hold that the testator
intended that if he should die the day after a particular
debt matured, such debt should pass to his wife by his will,
but that if he died the day before it matured, it should not
be governed by his will, but should be left to pass as intes-
tate estate to his heirs at law under the statute. We think it
unreasonable to suppose that a testator would intend to will to
his wife a considerable sum of money if he should happen to
die after a certain date, and leave that sum of money
undisposed of by will if he should happen to die
a few days earlier. We are of opinion that the testator
intended to give to his wife all moneys, notes and obligations
of every kind for the payment of money which should be
owing to him at the time of his death, without regard to
the time when the same became payable, and that the testa-

tor intended to dispose of his entire estate. True he did not dispose of the legal title to the lands he so contracted to sell, but this legal title was only held as security for the payment of the debt (1 Woerner's Am. Law of Administration, 2d Ed., star page 593), and the executors could be compelled to deed the land. R. S. chap. 29.

We are not unmindful that in this state a devise of land by will carries with it the unpaid purchase price under a contract by the testator for the sale and conveyance of such land. Heirs of Wright v. Minshall, 72 Ill. 584; Covey v. Dinsmoor, 129 Ill. App. 49; 226 Ill. 438; Adams v. Peabody, 230 Ill. 469. This is contrary to the rule generally prevailing elsewhere. 1 Woerner's Am. Law of Administration, 2d Ed., star page 103. We do not think that it follows that, in this state, if intestate lands descend to the heirs, the latter take the money which was to be paid to the deceased, but rather that in such a case the general rule elsewhere also prevails here, which is that an agreement for the sale of land converts it into personalty, and the money when paid goes to the administrator. 2 Woerner's Am. Law of Administration, 2d Ed., star page 1233. Indeed, it is not questioned here but that if the moneys unpaid upon the contracts were due to the testator at the time of his death, within the meaning of this will, then the order in favor of the widow should be affirmed.

The order is therefore affirmed.

*Affirmed.*