PATTERSON, J.
This appeal is from an order of the special term confirming the report of a referee appointed under the statute (2 Rev. St. 45, §§ 19, 24, 25, as amended by Laws 1862, c. 373), to determine a controversy between the claimant, Mr. Mills, and the receiver of the St. Nicholas Bank. The referee reported *36 in favor of the allowance of the claim, which arose out of a conceded state of facts, as follows:
Mr. Mills was the owner of certain premises in the city of New York, of a portion of which the St. Nicholas Bank became the tenant. In August, 1891, an instrument in writing was executed by both parties in the following words:
“Agreement to lease, to wit: D. 0. Mills, party of the first part) hereby agrees to lease unto the St. Nicholas Bank, party of the second part, and the said party of the second party hereby agrees to take rooms AA and AB in the ground story of the Mills Building, Broad St., Exchange Place, and Wall St., for a term of 5 years, to commence on the 1st day of May, 1892, and to end on the 1st day of May, 1897, at the yearly rent of $12,000 dollars.
“Memorandum: The lessee is to have the privilege of 5 years additional at the same terms. In the event of the occupancy of the offices prior tp May 1st, 1892, the rent up to that date will be one-half the rate per annum, as stated in letter of D. O. Mills, of July 23rd, 1891. Other conditions are embodied in said letter, a copy of which is attached hereto.
“The parties hereto agree to execute and exchange leases of said rooms, prior to the occupancy thereof; such leases to be drawn on, and this agreement being subject to all the provisions of, the blank forms in use in the Mills Building, except as modified by the above memorandum. This agreement shall bind the parties hereto, and each of their legal representatives.
“Dated, New York, August 20th, 1891.
“SAINT NICHOLAS BANK of N. Y. [L. &]
“By Arthur B. Graves, President [L. S.]
“In the presence of
“Wm. J. Gardner.”
The St. Nicholas Bank, in May, 1892, entered upon the occupation of the premises, and carried on its banking business therein until it became insolvent, which occurred in the latter part of December, 1893 ; and during all the period of its occupation it paid the rent as provided in the agreement above set forth. Mr. Grant was appointed receiver of the insolvent bank, and he continued in possession of the premises until the 1st of February, 1894, when lie vacated and removed from the same, whereupon Mr. Mills presented a claim for the balance of rent due and for other rent to become due under the agreement, which claim was rejected by the receiver. In the notice served upon the receiver, Mr. Mills claimed, a quarter’s rent, due February 1, 1894, and he also notified the, receiver that he had re-rented the premises covered by the agreement aforesaid to the German-American Bank from May 1, 1894, at a yearly rental of $9,000, and he claimed to be entitled, as against the receivership, to demand an item of indebtedness, amounting to $12,000, being the difference between the diminished! rent for the uuexpired term, to be paid by the German-Américan Bank, and the full amount for such unexpired term secured byi the agreement between him and the St. Nicholas Bank. This claim was asserted as arising under a condition contained in thq *37 printed forms generally used by the Mills Building, and referred to in the agreement, by which condition it was provided that, in case the leased premises should be vacated or deserted, the lessor might re-enter as the agent of the lessee, and re-let the premises as such agent.
It appears, in the proofs, that of the amount falling due, under the agreement, on January 31, 1894, the receiver paid, pursuant to an order of the court, the sum of $1,000, not strictly as rent, but for his occupancy of the premises for the month of January, 1894. The referee, in his report, allowed Mr. Mills’ demand as a valid claim against the St. Nicholas Bank, and the assets in the hands of the receiver, as follows s For the balance of the quarter’s rent (after deducting the $1,000 referred to) which fell due on the 31st day of January, 1894, $2,000; for the quarter’s rent which fell due on the 30th day of April, 1894, $3,000 ; for the total rent for each year, to become due according to the terms of the said lease, for the three years remaining of that term, amounting to $12,000 a year, less $9,000 a year, the amount received and to fall due under the lease with the German-American Bank, amounting to $9,000. These three items aggregating the sum of $14,000.
It is contended by the receiver that the allowance of these several items by the referee was erroneous, and that the agreement of August 20, 1891, did not constitute a lease, executed and delivered as such, but was merely an agreement to execute a lease at a future time, and before the tenant was to enter into possession of the premises under the terms of the agreement; that the agreement was, therefore, merely executory, and that the complete relation of lessor and lessee, within the contemplation of the parties, and upon the terms stated in the agreement, was not to be constituted until a formal instrument of lease, on the blank form of lease mentioned in the agreement, was executed and interchanged between the parties. We agree with the learned referee that the instrument of August 20, 1891, is something more than a mere executory agreement. It is a distinct contract between the parties, in writing, by which Mr. Mills then presently agreed to lease, and the St. Nicholas Bank then presently agreed to become the lessee of, the premises in question, for a term named, at a price fixed, and upon conditions understood. The provision referring to the execution of a more formal lease was not necessary to the constitution of the relation of lessor and lessee between the parties, but merely pertained to the subsequent execution of an instrument in more extended form, and which should express more elaborately the terms and conditions of the contract of leasing then entered into between, and binding upon, both parties. There was not one single addition or different stipulation contemplated to be inserted in the formal or extended lease that was not by express understanding of the parties made part of the instrument of August 20, 1891; for the conditions which were printed upon the forms of lease used by Mr. Mills were not to become operative only when a further instrument was executed, but by the express provision ¡of the agreement of August 20th they were incorporated in and *38 became part of that agreement itself, precisely in the same way as if they had been inserted in totidem verbis. The words are:
“ And this agreement being subject to all the provisions of the blank forms in use in the Mills Building, except as modified by the above memorandum.”
Giving effect to those conditions is not arbitrarily importing into the agreement something not contained therein, but is reading into it that which the parties specifically contracted should form a part of it; and so those conditions come into play as subsisting terms of the contract, binding upon and enforceable against them both, according to their tenor. It was competent for the parties to waive the provision respecting'the execution of a further paper, and they did waive it. The bank entered into the occupation of the premises under that agreement of August 20th, paid rent under it, and recognized it as all-sufficient; and, the question being one of intention of the parties, to be gathered from the whole instrument, that intention is quite obvious, and the conclusion of the referee in that regard is fully supported, and he was right in regarding the instrument as a lease. Poole v. Bentley, 12 East, 168. See, also, Pratt v. Railroad Co., 21 N. Y. 309, and Sanders v. Fruit Co., 144 N. Y. 209; 63 St. Rep. 76.
It is further claimed, on behalf of the receiver, that, from the nature of the indebtedness, it is not one that can be chargeable against the assets of the insolvent bank in the hands of the receiver. This objection,’in the particular aspect now presented, is not ponsidered by the referee in his opinion. Stating it in the language of the learned counsel for the receiver, the argument is that, assuming the agreement of August 20, 1891', to have been a lease, and even reading the blank form into it, nevertheless, the receiver was bound to reject the claim filed by Mr. Mills, except as to the $2,000, because, by Mr. Mills’ re-renting to the German-American Bank, he canceled the open, subsisting engagement, and substituted a claim for a contingent liability of the bank, which the receiver has no power to recognize. Authority to support this proposition, it is claimed, is found in Re Hevenor, 144 N. Y. 271; 63 St. Rep. 692. That was a case of a claim against an estate in the hands of an assignee under a general assignment for the benefit of creditors. The assignor was the lessee of certain premises in the city of Buffalo for a certain term of-years at an annual rental of $7,200, payable monthly in advance. The assignment was made to pay all debts and liabilities of the assignor then due or to grow due. The lease contained a provision substantially similar to that incorporated.in the agreement between this claimant and the St. Nicholas Bank, namely, that if the premises became vacant during the term because of nonpayment of rent or otherwise, the lessor might re-enter or re-let as agents of the lessee, and apply the avails thereof to the payment of the rent due under the lease. The lessors took possession, and re rented the premises at a greatly diminished rental, and presented their claim for the loss occasioned thereby, and the claim was rejected, and the rejection was upheld. The ground upon which the court of appeals! disallowed the claim of the lessors was that, by exercising then! *39 •option to terminate the agreement to pay monthly rent, and re-enter the liability of Hevenor, the original lessee, became contingent upon the success which the lessors might meet with in re-renting the premises,—a liability which might or might not arise, and, if it did arise, could only be finally and definitely ascertained at the end of the term; and that, within the meaning and intent of the assignor, such a claim could not be regarded as one of the debts or liabilities contemplated to be paid under the deed of assignment. It was therefore upon the construction of the assignment that this ruling of the court of appeals was made, and the court said:
“ That instrument is to be followed strictly, by the assignee, in his disposition of the property. It is his guide, and furnishes the measure of his duty. The liability of the lessees was only for a possible deficiency. It did not exist at the time of the assignment, but arose subsequently.”
And it is also said that such after-accruing debts or liabilities ■could not be intended to be secured by an assignment, and, if an assignor so declared in a deed of assignment, it would be void.
But the situation of a receiver of an insolvent bank is quite different from that of an assignee for the benefit of creditors, limited in his authority and power by the terms of his deed of assignment. The receiver has no controlling directions to follow, except those of the court and the law. “The assets in his hands constitute a fund for the payment of debts of the bank, including those to mature as well as those that have become due, aud to cancel and discharge all subsisting obligations.” People v. National Trust Co. of New York, 82 N. Y. 283. The agreement of the St. Nicholas Bank to pay rent for the full term to Mr. Mills did not cease to be a subsisting obligation by reason of the bank’s insolvency and the appointment of the receiver. Had Mr. Mills not re-entered, but allowed the demised premises to remain vacant, he could have recovered all the rent as it accrued. But, instead of doing that, he availed himself of the right he had, under the agreement, to rent the premises to a new tenant, to contract with such new tenant as the agent of the bank; and by so doing he acted in the interest of the bank by diminishing its contracted indebtedness to him, and his action, in legal effect, was the same as if the bank itself had sublet the premises, and caused the amount to be paid by the subtenant to be paid to Mills, to be applied on the whole rent for which the bank was liable, leaving the balance as an outstanding indebtedness. His agreement having expressly conferred upon him the right he exercised, there is nothing left to construction, as in the case of the assignee for the benefit of creditors. Mr. Mills did not cancel the lease, nor discharge the lessee, but, within the scope of his authority as agent of the ■St. Nicholas Bank, made the new arrangement with the GrermanAmerican Bank in such a way that the indebtedness of the former bank to him became fixed at a definite minimum sum of $3,-000 a year, and he chose to regard that amount as the full measure of any loss he might sustain by reason of the abandonment •and vacation of the premises by the bank and the receiver. We *40 think, therefore, there this is a clear distinction between the Hevenor Case and this, and that the order of the special term confirming the report of the referee was rightly made.
Order affirmed, with costs.
BARRETT, RUMSEY and WILLIAMS, JJ., concur.