1240 THIRD AVE., INC., Respondent, v. WILLIAM BIRNS, Appellant, Impleaded with MEYER NEWMAN, Defendant.

First Department, May 29, 1931.

*Henry Greenberg*, for the appellant.

*David L. Podell* of counsel [*Jacob J. Podell* and *Mortimer Hays* with him on the brief; *David L. Podell*, attorney], for the respondent.

SHERMAN, J.   The main question upon this appeal is whether the contract annexed to the complaint is binding upon the parties and enforcible as matter of law.   This action is at law for damages because of defendants' failure to perform.

Plaintiff claims that defendants agreed to purchase premises owned by plaintiff at the corner of Seventy-third street and Third avenue, Manhattan, under a lengthy written contract prepared upon one of the standard title company forms, setting forth in great detail all the essentials of a real estate purchase contract.

The principal issue litigated at trial was whether defendants executed the contract as parties, or merely signed it as witnesses. The body of the instrument recited their names as purchasers. They signed their initials instead of their full names.   They affixed their full signatures to a receipt which was given at the same time for a down payment on the contract.   Defendant Newman conceded that he signed as a party and testified that defendant Birns signed in the same capacity.   A check for the deposit was given by Birns and the jury was amply justified in finding that he signed as a party.   No other conclusion would have been justified by the evidence.

On this appeal it is now urged that the entire agreement is to be denied binding quality, it being contended that the provision in the contract for the giving back by the purchaser to plaintiff of a sixty-three years lease is so indefinite as to nullify the agreement.   The clause in the contract which is thus assailed reads as follows:  " The purchasers agree, upon the closing of title, to execute a lease of the entire ground floor stores of the building, to be erected upon the said premises, on Third Avenue and running sixty feet west of 73rd Street, to be laid out in accordance with the requirements of the seller — about seven stores — for a period of sixty-three (63) years, at the rental of Ten Thousand Dollars for the first ten years and Twelve Thousand Dollars for the balance of the term.   Payment to commence thirty days after notice to tenant that the building is completed and the certificate of occupancy is issued — payable in equal monthly installments on the first day of each and every month in advance.   Said lease to contain the *usual clauses used by renting brokers in that vicinity.* Said lease to contain a clause permitting assigning and subletting and alterations in and about said stores.   Said lease also to provide

that the landlord is to furnish such steam heat and any other conveniences that are furnished to other tenants in the building."

This clause embraces all the essential terms of an agreement to lease the ground floor to plaintiff. (McAdam Landl. & Ten. [4th ed.] pp. 189, 190.) Upon the closing, a formal document embodying them could readily have been drawn and executed. No essential terms are omitted or left in doubt. The names of the lessor and lessee are specified, the property to be leased described, the length of the term set out, and the time when rent is to commence and the amount of the rent are fixed. Appellant Birns contends that the words " said lease to contain the usual clauses used by renting brokers in that vicinity " are so indefinite that they turn what was intended to be a formal agreement into a mere scrap of paper.

With this contention we cannot agree. It is well settled that a provision for the making of a formal lease to include usual covenants will not render an agreement too indefinite for enforcement, where the writing sets forth the essential terms. (35 C. J. 1201.) Usual clauses are of a stereotyped form, well understood by real estate men. Preliminary realty purchase contracts are made daily in New York city referring to usual clauses or forms containing them to be inserted into the formal contract. Indeed the proposed purchase-money mortgage to be executed here by the purchaser was to embrace " clauses usually used by the title company," yet no one has the hardihood to suggest that this provision is so indefinite that the whole transaction fails.

The agreement to execute the lease upon the closing of title, in so far as it made reference to a provision for usual clauses, " merely pertained to the subsequent execution of an instrument in more extended form and which should express more elaborately the terms and conditions of the contract of leasing then entered into between and binding upon both parties." (*People* v. *Saint Nicholas Bank*, 3 App. Div. 544, 548; affd., 151 N. Y. 592.)

We are now told, however, that there is no proof that there were " renting brokers in that vicinity " or that they used any " usual clauses." This statement is erroneous. There is actual proof of the existence of both. The parties have inferentially so set forth in the contract itself. No one testifies to the contrary. Defendants' answer tendered no issue, and they offered no proof, on that subject. Plaintiff is suing, not for specific performance, but for damages. If the suit were for the former, where a greater degree of certainty is required, proof would be essential and doubtless would have been supplied to support a finding as to the precise language in which the lease would be couched. If necessary, the court would take judicial notice of the

fact that there are renting brokers in the vicinity of the premises. Such proof as there is in this record tends to show that the Gilsey lease form is generally accepted as containing their usual clauses, so that the jury could have found — if that issue had been submitted to them — that the Gilsey form contained the usual clauses used by renting brokers in that vicinity.

It is next suggested that the contract does not describe in detail the kind of building to be constructed, the height of each store ceiling, the kind of store front to be erected, the size and kind of show windows to be installed and the dates when the building was to be commenced and when to be finished. It is to be remembered that plaintiff was to be the tenant only " of the ground floor stores — about seven in number." Defendants being governed by the Building Code, could fix the height of the building and ceilings, determine the character of the front of the building and decide upon all such details. They also had a reasonable time within which to perform. A contract of purchase providing for a lease of the building to be erected cannot set forth each and every conceivable detail of the proposed structure. If a party can avoid liability and need not perform an agreement unless all details are covered, every such agreement carries a loophole of escape. Plaintiff is to be penalized because it bound itself to occupy and pay rent for such stores as defendants would erect on the purchased premises, and left it to defendants to determine the kind of structure of which the stores would be a part.

Here, plaintiff was not concerned with the entire building; it was interested in the stores on the ground floor and would have been compelled to take for occupancy such stores, about seven in number, as the defendant would have provided. The difficulty is that the appellant did nothing beyond falsely disavowing the execution of the contract and repudiating his engagement solely on that ground. No attempt was made to embody these agreed terms in a formal lease at a closing.

Appellant contends that the insertion of a large number of particular provisions in the long term lease must have been contemplated by the parties. There is a total dearth of proof on that subject. Who shall say that the parties wished any further provisions than are found in their own document? In fact, definite provisions are found relating to assignment, subletting, alterations, etc. If the parties had desired additional special covenants in the lease, they should have stipulated for their insertion, " since in the absence of such a stipulation the law will imply that the parties had in view the usual covenants or the usual form of lease." (*Scholtz* v. *Northwestern Mutual Life Ins. Co.*, 100 Fed. 573.)

The written contract in evidence indicates that the parties contemplated no further negotiations or agreement upon any essential term. That obvious intention appears indisputably in the instrument itself, which is complete on its face. It is clear that the parties knew that " usual clauses " used by renting brokers called for a standard form which required no further agreement. " A stipulation to reduce a valid written contract to some other form does not affect its validity." (*Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209.)

The judgment appealed from should be affirmed, with costs.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Judgment affirmed, with costs.