201 P.2d 976

MORGAN v. FIRESTONE TIRE & RUBBER CO. et al.

No. 7447.

Supreme Court of Idaho.

Dec. 2, 1948.

O. R. Baum, Ben Peterson and Darwin D. Brown, all of Pocatello, for appellant.

Merrill & Merrill, of Pocatello, for respondents.

HYATT, Justice.

In July, 1943, appellant, a married man, contemplating an investment with community funds, and The Firestone Tire and Rubber Company (Ohio corporation), de-siring to dispose of its business real estate in Pocatello but retain possession and use of the same by lease for a period of years, entered into the following agreement (being the latter's standard form but deletion and italics ours), without appellant's wife joining therein:

"The Firestone Tire & Rubber Company, an Ohio Corporation, hereby agrees to sell, and The Undersigned hereby agrees to purchase the following described real estate, as described herein, in fee simple, on the terms stated below, conveyance to be made by warranty deed:

"Said real estate being described as follows:

"Lots One (1), Two (2), and Three (3) inclusive of Block Four Hundred Fifty-four (454) of the City of Pocatello, Bannock County, Idaho, according to the official survey thereof, ...... Subject to conditions, reservations and restrictions of record.

"The purchase price is to be Thirty-eight Thousand Dollars ($38,000.00) payable One Thousand Dollars ($1,000.00) as earnest money and part of the purchase price.

"Upon the execution of this contract by Purchaser said earnest money shall be deposited in escrow with Pocatello Branch, First Security Bank of Idaho as escrow holder. The remaining Thirty-seven Thousand ($37,000.00) Dollars (cash) shall be paid to Seller through escrow upon the

passing of the title as hereinafter specified.

"The Seller shall furnish the Purchaser an Abstract of Title brought down to date, covering the property hereinabove described and the said title shall be good and merchantable subject to conditions, reservations and restrictions of record: *otherwise, this Contract shall be void and earnest money refunded if Seller fails to provide good title as hereinafter provided.*

"*As an inducement to the Purchaser to purchase this property, and as part of the consideration thereof, the Seller agrees to lease the above described premises from the Purchaser, said lease to be entered into contemporaneously with the passing of title under this Contract.* Said lease to be for a term of ten (10) years at a 'net rental' of Two Thousand Two Hundred Eighty Dollars ($2,280.00) per annum, payable One Hundred Ninety Dollars ($190.00) per month on the first day of each month in advance; 'net rental' meaning that the *Lessee* (the Seller herein) *shall pay taxes and assessments accruing during said term; shall maintain the premises in good repair at its own cost and expense.* Said lease *shall provide* that at the expiration of the lease, Lessee will return said premises to the Lessor in as good order and condition as when leased, occupational and ordinary wear and tear excepted. *Said lease shall further provide that in the event of fire and other casualty, the Lessee shall restore the premises to its former condition at its own cost and expense. Said lease as to form, taxes and assessments, restoration in event of fire and other casualty, and other terms and conditions shall be subject to the approval of both parties hereto.*

"Lease *to be executed* by Lessee, viz: The Firestone Tire & Rubber Company, an Ohio corporation. (Being the parent corporation.)

"The sale shall be closed within thirty (30) days from date of delivery of Abstract of Title or as soon thereafter as marketable title can be investigated and furnished. It is agreed that the Seller shall furnish, and Purchaser shall have a reasonable time in which to investigate, good and marketable title to said property. In the event the title is objected to, the Seller shall be furnished with a written statement of all objections. If title is not marketable and cannot be made so within One Hundred Twenty (120) days after receipt of such objections, this agreement shall be void, in which case neither party shall be liable for damage hereunder and all money theretofore paid by the Purchaser shall be refunded.

"The undersigned Sellers agree to pay to Bryan & Company, Box 1187, Pocatello, Idaho, as Real Estate Broker, through said escrow, the regular prevailing commission for said sale as provided under the schedule of commissions of the Real Estate Board where the property is located if and when the deal is fully consummated as evidenced by delivery of Deed to Purchaser.

"*Should the Purchaser fail to carry out this Contract, in accordance with all of its provisions, the earnest money as shown herein shall be forfeited as liquidated damages, at the option of the Seller,* and the earnest money so forfeited shall be divided equally between the Seller and said Broker."

"s/ Nate Morgan
—————————————
Purchaser
"The Firestone Tire &
Rubber Company
"s/ R.L.C. s/ By H.
E. Ludwick
"Attorney in Fact
"Seller"

"Witnesses:
- "s/ P. M. Bryan

After title was found satisfactory to appellant, the company submitted its standard printed form of lease, which he rejected as containing matters not in the agreement and therefore detrimental to his interests. Thereafter, appellant's attorney and the company's agent satisfactorily revised another of the latter's printed lease forms except that appellant, through his attorney, requested the company to carry "outside" insurance for fire or other casualty instead of him accepting the company's responsibility therefor as provided by the contract.

Appellant and the agent then met, personally, on this matter and the latter wired appellant's attorney that it was tentatively agreed Firestone would carry "outside" insurance and he was making such recommendation to the home office at Akron. Shortly thereafter the agent notified appellant's attorney by wire that the company would not obtain such insurance, that it had gone as far as it could in attempting to reach mutually satisfactory terms and conditions on the lease, and was terminating negotiations and cancelling the contract. It refused thereafter to negotiate further and appellant then brought this suit in his name alone for specific performance of the agreement.

The vendor by its answer admitted the execution of the agreement and by way of defenses set up that it submitted a standard form of lease, but by reason of plaintiff's demands, conclusion of the agreement was impossible, and it cancelled negotiations and declared the transaction at an end; further, that the agreement being entire and indivisible was not specifically enforceable because of its indefiniteness and uncertainty as to the terms of the lease and the invalidity of the lease provision for failure of appellant and wife to join in the execution and acknowledgement of the agreement.

The trial court found: Appellant was financially able to pay the purchase price; the parties never came to an agreement as to the terms of the lease, particularly upon the matter of restoration of said premises in the event of fire or other casualty or the type and character of insurance that was

to be carried or by whom the same was to be insured; plaintiff had not performed the covenants on his part to be performed; the lease was an integral part of the contract; the terms thereof as to the lease were indefinite and uncertain and the minds of the parties never met upon the same; the purchase was to be made with community funds and since the lease was to be for more than one year, the entire agreement was void for failure of appellant and wife to join in signing and acknowledging the contract.

The trial court accordingly entered its decree denying plaintiff any relief, from which this appeal is taken.

Assignments of error attack these findings and the decree as being contrary to the evidence and the law.

■ Whether a contract is entire or severable depends on the intention of the parties which is to be ascertained and determined, when the contract is unambiguous, from the subject matter of the agreement and the language used therein, taking the agreement as a whole and not its separate parts without regard to one another. Durant v. Snyder, 65 Idaho 678, at page 685, 151 P.2d 776; Shaw Supply Co., Inc. v. Morgan, 48 Idaho 412, 282 P. 492; 13 C.J. 562; 17 C.J.S., Contracts, § 332; Page on Contracts, 2nd ed., Vol. 4, page 3609, Sec. 2085; 12 Am.Jur. 870. See also Utah Construction Co. v. McIlwee, 45 Idaho 707, at page 718, 266 P. 1094.

■ Tests for determination of divisibility or indivisibility have been stated as follows:

"The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned, so that for each covenant there is a corresponding consideration, the contract is severable. If, on the other hand, the consideration is not apportioned, and the same consideration supports all the covenants and agreements, the contract is entire. 3 Page on Contracts, § 1484. A contract is entire when by its terms, nature, and purpose, it contemplates and intends that each and all of its parts and the consideration shall be common to each other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment." Armstrong v. Illinois Bankers Life Co., 217 Ind. 601, 29 N.E.2d 415, 420, 131 A.L.R. 769; Thompson v. Fesler, 74 Ind.App. 80, 123 N.E. 188, quoted with approval in Durant v. Snyder, supra.

"As a general rule, it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent". 13 C.J. 561; 17 C.J.S., Contracts, § 331.

"We think that perhaps the best test is whether all of the things, as a whole, are of the essence of the contract. That is, if it appeared that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable." Waddell v. White, 51 Ariz. 526, 78 P.2d 490, 496.

"One of the most certain of the single tests for determining the intention of the parties is whether the consideration on the one side is apportioned to each of the different covenants on the other, or whether the consideration on the one side is the entire consideration for all the covenants upon the other side. * * * If the consideration is not apportioned to the various covenants on the part of the adversary party, the contract is prima facie entire". Page on Contracts, 2d Ed., Vol. 4, Sec. 2088, page 3611.

"The essential test to determine whether a number of promises constitute one contract or more than one, is simple. It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." Williston on Contracts, Vol. 2, page 1652; Rev.Ed. Vol. 3, page 2422.

■ The contract is entire. For a single money consideration the purchaser was buying property and "as an inducement" to him "to purchase this property and as *a part of the consideration therefor*" the seller agreed to lease the property. (Emphasis added.) See Spokane Cattle Loan Co. v. Crane Creek Sheep Co., 39 Idaho 801, 230 P. 772.

Further, the lease should "be entered into contemporaneously with the passing of title". This made the covenants for purchase and sale and for leasing dependent. See 14 Am.Juris. 487; 55 Am.Jur. 579.

Finally, the vendor could forfeit the purchaser's down payment if the latter failed to carry out the contract in accordance with "all" of its provisions; also, the agreement was to be void if title could not be made marketable within a certain time. See Orenstein v. Kahn, 13 Del.Ch. 376, 119 A. 444.

Since the contract is indivisible, it must stand or fall in its entirety, depending upon whether the provisions thereof with reference to the lease are void as a conveyance or encumbrance of community property or are too incomplete and uncertain to constitute an enforceable agreement. We shall consider these two matters in the order named.

Section 31-913, I.C.A., prior to 1945 amendment, effective when the transaction was made, provided:

"Husband's control of community property.—The husband has the management and control of the community property, except the earnings of the wife for her per-

sonal services and the rents and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered."

■■ The provision relative to the husband's management and control makes him the agent and trustee for the marital community. Kohny v. Dunbar, 21 Idaho 258, 121 P. 544, 39 L.R.A.,N.S., 1107, Ann.Cas. 1913D, 492. As such manager he may purchase with community funds, property which upon acquisition is community property under Sec. 31-907, I.C.A.

■ It is unnecessary for the wife to join with her husband in the execution of an instrument by which community real property is acquired. Intermountain Realty Co. v. Allen, 60 Idaho 228, 90 P.2d 704, 122 A.L.R. 647.

■■ Here the husband as agent of the community was in process of acquiring, as he had the right to do, certain property with community funds. Before acquisition, and as a condition thereto, he agreed that title, when it passed should be instantaneously subjected to the lease. Title could not rest in the community for a single moment without the lease attaching. Delivery of the deed and lease had to be simultaneous. From a practical standpoint, the situation is no different than one where the vendor by the contract provides for a reservation of the possession and use of, or an estate in, the property, for a term of years, and that the deed contain such reservation. The husband, as manager of or agent for, the community, can purchase real property which is subject to liens, reservations and exceptions. See Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536, at page 538. Such dealings are not prohibited by the statute. It is only after the community once acquires title that he cannot under Sec. 31-913, I.C.A., supra, convey or encumber the community property without the wife joining with him in the execution and acknowledgment of the instrument of conveyance or encumbrance. While the rule is well settled that the character of community property is fixed at the time of its acquisition and the wife's interest vests at that time (Pendleton v. Brown, 25 Ariz. 604, 221 P. 213; McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250; In re Woodburn's Estate, 190 Wash. 141, 66 P.2d 1138), it is not so fixed, nor does the wife have any interest therein, until the time of acquisition.

In the case at bar, the husband in order to acquire property for the community agreed, as agent for the community, by an indivisible contract with dependent covenants, that the property, at the very moment of acquisition, should be subject to a lease in favor of the vendor.

■ The principle here involved has been recognized in connection with pur-

chase money mortgages. There is no question that a lease for more than one year is a conveyance or encumbrance and this court has also recognized a mortgage to be a conveyance and encumbrance. Abbl v. Morrison, 64 Idaho 489, 134 P.2d 94; Intermountain Realty Co. v. Allen, 60 Idaho 228, 232, 90 P.2d 704, 122 A.L.R. 647; Hancock v. Elkington, 67 Idaho 542, 186 P.2d 494; John Hancock Mutual Life Ins. Co. v. Girard, 57 Idaho 198, 64 P.2d 254; Sec. 54-813, I.C.A.

In Munro v. McAllister, 34 Idaho 638, 203 P. 286, it was contended that a purchase money mortgage was void because the wife was not named as a grantor therein (although she did sign and acknowledge it). We said:

"Since the note and mortgage given to respondent was for the balance of the purchase price, the lien created thereby was *pior to any right* which may have been acquired by the community, and *it was therefore immaterial whether the wife was named as a grantor in the mortgage or not.*" (Emphasis added.)

In Davidson v. Click, 31 N.M. 543, 249 P. 100, 105, 47 A.L.R. 1016, the New Mexico Supreme Court, under a statute similar to Section 31-913, I.C.A., supra, held that when a husband acting as agent for the community, purchases real property in his own name for the benefit of the community and, at the time, as a part of the transaction, delivers to the vendor a purchase money mortgage executed by him alone, for all or part of the purchase price, the mortgage is not void or within the ban of the statute.

That court pointed out that the New Mexico community property statute uses the word "acquired" and that the property has to be owned and possessed by the community before the statute relating to conveyances, mortgages, and encumbrances applies. It went on to say:

"Assuming that the husband has purchased real property on credit for the community and agreed to give a purchase-money mortgage * * *, and the vendor delivered deed * * * in consideration of such promise, then it is the high duty of the said vendee to comply with that condition of the bargain, and, if he fails or refuses to do so, a court of equity would doubtless compel him to discharge this trust obligation. * * * Having executed and delivered the mortgage, the trust ends, and then, and only then, does the beneficial title inure to the community. The result is that the property comes to the community in the state of the affairs of the community as conducted by the husband, that is, charged with the lien of the purchase-money mortgage validly executed by the husband alone as trustee for that very purpose. * * *"

Other language of the New Mexico court in that case is also applicable here:

"We come then to consider the process by which, and the condition in which, the

beneficial estate vests in the members of the community a community property interest in real estate under the circumstances of this case. That the husband is the agent of the community and the manager of the community property, although he no longer has the absolute power of disposition of the real property of the community, was declared in Baca v. Village of Belen, 30 N.M. 541, 240 P. 803, and Beals v. Ares, 25 N.M. 459, 185 P. 780. We know of no legal restraint upon the power of the husband as such agent of the community to acquire in his own name real property for the community benefit, which property may be at the time of the purchase known to be incumbered with a lien. It would likely not be asserted that the real property so acquired would be discharged of the lien merely because of the acquisition by the wife of an interest therein by operation of law. As was said in Thygesen v. Neufelder, 9 Wash. 455, 37 P. 672, cited in McKay on Community Property, 2d Ed. Paragraph 688: '* * * The interest of the wife in the community property is contingent upon the state of the affairs of the community as conducted by the husband.'

"It is not doubted that the husband may purchase real property for the community on credit. In El Paso Cattle Loan Co. v. Stephens & Gardner, 30 N.M. 154, 228 P. 1076, we said that community property is subject to community debts created by the husband alone, and in Brown v. Lockhart, 12 N.M. [10], 16, 71 P. 1086, that it is a presumption of law that any debt created during coverture is a community debt. The purchase price for community property acquired by the husband for the benefit of the community is a community debt, and as was said in Nutter v. Fouch, 86 Ind. 451, treating of a vendor's lien: 'It is unpaid purchase money that creates and sustains the lien.'" Davidson v. Click, supra, 31 N. M. 543, 249 P. at page 105, 47 A.L.R. at page 1024.

■ Applying the principle of the foregoing cases, the agreement is not void, under Sec. 31-913, I.C.A., supra, because executed by the husband alone. A decree of specific performance can operate effectively against both parties here and give to each the benefit of a mutual obligation, thereby satisfying the rule of mutuality of obligation and remedy. 49 Am.Jur. 49.

This case is one of first impression in this state on the proposition here involved and our ruling is controlled by the particular facts thereof. We are dealing with whether the transaction falls within the ban of Sec. 31-913, I.C.A., supra, and decide that it does not. Hancock v. Elkington, supra; Intermountain Realty Co. v. Allen, supra, and authorities cited in those decisions, are not in point here since in those cases the purported lease or conveyance was made by the husband after acquisition of the property by the community.

Respondent contends the contract is incomplete and uncertain as to the terms of

'the lease and cannot be specifically enforced, since it contains the following clause:

"'Said lease as to form, taxes and assessments, restoration in the event of fire and other casualty, and other terms and conditions shall be subject to the approval of both parties hereto".

As to taxes and assessments and restoration in the event of fire or other casualty, the contract is however, definite and specific. As to the lease, it is provided:

(a) The seller agrees to lease the above described premises from the purchaser;

(b) The lease shall be for a term of ten years (from the time of passing of title);

(c) The rental shall be $2,280.00 per annum, payable at the rate of $190.00 per month on the first day of each month in advance;

(d) The lessee shall pay taxes and assessments accruing during the term of the lease;

(e) The lessee shall maintain the premises in good repair at its own cost and expense;

(f) The lessee at the expiration of the lease shall return the premises in as good order and condition as when leased, occupational and ordinary wear and tear excepted;

(g) The lessee shall in event of fire or other casualty restore the premises to its former condition at lessee's own cost and expense.

We have in the above all the material and essential matters necessary for a lease. It is complete and certain as to parties, description of property, term, rental, payment of taxes and assessments, maintenance of the premises, liability for restoration in the event of fire or other casualty, and surrender. No essential terms are omitted, left in doubt or remain open for future determination. See 1240 Third Avenue, Inc., v. Birns, 232 App.Div. 522, 250 N.Y.S. 331. Levin v. Saroff, 54 Cal.App. 285, 201 P. 961; 51 C.J.S., Landlord and Tenant, § 190, page 791.

That part of the foregoing clause, which provides that terms as to taxes, assessments, and restoration in the event of fire and other casulaty, shall be subject to the approval of both parties, conflicts with, and is repugnant to, the preceding provisions in regard thereto.

While provisions of a contract are to be read together and harmonized whenever possible, yet if two clauses relating to the same thing are so repugnant that they cannot stand together, the first will be received and the later one rejected, especially when the latter is inconsistent with the general purpose and intent of the instrument and would nullify it. See 12 Am.Jur. 778, 779; 6 R.C.L. 847; Dupuy v. United States, 35 F.2d 990, 68 Ct.Cl. 574; Annotation 60 Am.St.Rep. 93.

Special provisions will control over general ones where both relate to the same thing. 12 Am.Jur. 779; State v.

Commercial Casualty Ins. Co., 125 Neb. 43, 248 N.W. 807, 88 A.L.R. 790; Harrity v. Continental-Equitable Title & Trust Co., 280 Pa. 237, 124 A. 493.

Further, as between two permissible constructions, that which establishes a valid contract is preferred to one which does not, since it is reasonable to suppose that the parties meant something by their agreement, and were not engaged in an attempt to do a vain and meaningless thing. 6 Cal.Jur. 268. See also, Durant v. Snyder, supra, 65 Idaho at page 686, 151 P.2d 776; 12 Am.Jur. 793; Hunt v. Hunt, 119 Ky. 39, 82 S.W. 998, 68 L.R.A. 180, 7 Ann.Cas. 788.

The contract was on one of respondent's printed forms, prepared by it and containing its language. It is a well settled rule of construction that words of a contract will be construed most strongly against the party who uses them. Hauter v. Coeur D'Alene Mining Co., 39 Idaho 621, at page 635, 228 P. 259. Especially should the rule apply where, as here, respondent seeks to defeat the contract by virtue of such language.

Under the foregoing rules of construction, the specific provisions relating to taxes, assessments, and restoration in event of fire or other casualty, control over and abrogate the provision that such matters shall be subject to approval of both parties.

This leaves the clause relied on to read as follows:

"Said lease as to form and other terms and conditions shall be subject to the approval of both parties hereto".

Since all the material, essential and necessary terms of a lease are definitely agreed upon and it is incumbent upon us to give the agreement, if it is possible so to do, a construction which will render it vital and effective rather than one which will nullify it, we are of the opinion that the clause, as it now stands, is surplusage. The word "form" adds nothing. Neither does the phrase "other terms and conditions". In this case "other terms and conditions" are unnecessary to complete the lease. The specific terms agreed upon are sufficient to make it legally complete. *No subject matters or items of "other terms and conditions" are mentioned, specified or listed.* There is nothing to show that the parties had any further particular lease matters in mind which had to be agreed on in the future before the contract could be effective.

It has been held that if a written executory contract to make a lease contains a definite statement of the particular elements of the lease, but is silent as to the general, usual, and ordinary covenants and conditions, these will be implied and decree of specific performance granted. 49 Am.Jur. 143; Bennett v. Moon, 110 Neb. 692, 194 N.W. 802, 31 A.L.R. 495; Kaplan v. Krantz, 202 Ga. 194, 42 S.E.2d 371; 35 C.J. 1201; 51 C.J.S., Landlord and Tenant, § 188; see also, Janssen v. Davis, 219 Cal. 783, 29 P.2d 196, to the

effect that if the material elements are agreed on, the usual and reasonable terms found in the class of contract involved, are in contemplation of the parties a part of such contract.

Since the contract is complete and certain, as to the essential and material terms, parts, and elements of a lease, specific performance can be granted. 58 C.J. 940. For the general rule see Sherman v. Watson, 58 Idaho 451, 74 P.2d 181.

Nolan v. Grim, 67 Idaho 138, 173 P.2d 74, 75, relied on by respondent, is distinguishable. In that case the agreement (for sale of land) provided for "The delivering of a mortgage to the sellers of $23,000.00" as part payment of the purchase price. Nothing more was said about such mortgage. We held the contract incomplete and indefinite because:

(1) It did not appear if this was to be a purchase money mortgage or was to cover or include other property;

(2) The maturity date and interest rate were not specified;

(3) The method of payment, i. e., by instalments or lump sum, was not stated.

In Brothers v. Arave, 67 Idaho 171, 174 P.2d 202, a decree of specific performance (sought in effect in suit to quiet title) was properly denied since the parties never agreed on the particular amount of land to be sold; hence, a material element of the contract was lacking and the contract was incomplete.

Respondent argues that since the parties conducted subsequent negotiations about certain terms of the lease, such conduct shows, and should be taken as evidencing, an intention to leave the terms of the lease open for future agreement. The contract here is not ambiguous in the sense that conduct has to or should be resorted to as an aid to construction. Utah Construction Co. v. McIlwee, supra. Nor can it be said that simply because parties misunderstand the legal tenor and effect of an executory contract and enter into futile negotiations concerning further terms for the transaction involved, either shall be denied what he is legally entitled to under the contract.

The finding of the trial court that appellant "has not performed each and all of the covenants on his part to be kept and performed" is not justified. Undoubtedly this finding was made because of appellant's insistence that the company carry "outside" insurance when the contract made the latter responsible for restoration of damage in event of fire or other casualty.

In view of the facts hereinbefore related, appellant's conduct constitutes no wilful violation; even so, respondent has not been injured or deprived of any substantial benefit. It led appellant to believe his request would be granted. Specific performance therefore will not be denied. 49 Am.Jur. 54, 55. Nor did respondent

ever tender a lease limited to the terms of the agreement.

The decree of the trial court is reversed and the cause remanded with instructions to make and enter findings of fact, conclusions of law and a decree in accordance with this opinion. The decree shall grant specific performance of the contract in accordance with its terms, disregarding the following provision, to wit:

"Said lease as to form, taxes, and assessments, restoration in event of fire and other casualty, and other terms and conditions shall be subject to the approval of both parties hereto".

Costs to appellant.

GIVENS, C. J., HOLDEN, J., and BAKER, District Judge, concur.

MILLER, J., sat but did not participate in the decision.