Van Voorhis, J.
(dissenting). Defendant has appealed from a judgment directing specific performance of an option whereby it agreed to make a lease for twenty-one years to plaintiff of a building in New York City. The answer alleges that the option does not set forth all of the terms which the parties had intended to incorporate into the lease some of which, it is asserted, were left to be agreed upon in the future.
The option, in full, is as follows:
“ In consideration of the sum of Two Hundred ($200.00) dollars, paid to the undersigned by 1130 President St. Corp., a New York corporation of 185 Montague Street, Brooklyn, New York, the receipt whereof is hereby acknowledged, the undersigned, being the owner of the premises known as 22-30 Little West 12th Street and 63-65 Gansevoort Street, New York City, does hereby give to the said 1130 President St. Corp., an option to rent the said premises 22-30 Little West 12th Street and 63-65 Gansevoort Street, New York City, from the undersigned as landlord, upon a lease for a term of twenty-one (21) years, to commence six (6) months from the date the option is exercised, and the rent for the said premises shall be Twelve Thousand ($12,000.00) dollars per year net, the tenant to pay taxes and public liability insurance premium only.
“ The premises are and will be subject at the time [the] lease is made to mortgage thereon not exceeding Fifty-Five Thousand ($55,000.00) Dollars and interest. This option may be exer *406 cised by the said 1130 President St. Corp., within three (3) months from the date hereof, upon the payment of Thirty Thousand ($30,000.00) Dollars, at which time a lease containing the above terms and in form satisfactory to the tenant shall be entered into, and at which time possession of the entire building shall be given to the 1130 President St. Corp.
“ Dated, October 22, 1946.
“ Bolton Realty Corporation,
“ Alexander E. Berettie
“ Treas.
“ (Bolton Realty Corp. Seal)
“ 1130 President St. Corporation
“ By Norman Kalt, V-Pres.”
On December 18,1946, prior to its expiration, this option was extended by written agreement signed by the parties, until April 1, 1947. The extension was binding, with or without consideration, in view of subdivision 1 of section 279 of the Real Property Law. Within the extended period, plaintiff notified defendant that it exercised the option, and was ready, willing and able to perform according to its terms, but defendant refused to enter into any lease, upon the principal ground, as expressed in a letter to plaintiff, that “ the option is not complete and that there are still substantial terms to be agreed upon at a future date.” Defendant did not specify what terms it contended had been left open, nor offer to enter into any negotiations respecting either the form or substance of the instrument. The testimony shows that plaintiff did not ask for any new provisions in the lease and told defendant to have it prepared in such form as defendant deemed proper, but that defendant expressly refused to sign a lease of any kind whatever upon the ground that it was under no obligation to do so. Defendant rested upon plaintiff’s proof. “ When a valid option to purchase real property is accepted the obligations and remedies of the parties become mutual so as to make specific performance a proper remedy. (Jones v. Barnes, 105 App. Div. 287; Fox v. Hawkins, 150 App. Div. 801.)” (Hamilton College v. Roberts, 223 N. Y. 56, 63.) The same is true of an option to make a lease. In order to render such an option enforcible, it must, of course, state such terms and conditions as are essential to the existence of a landlord and tenant relationship, and indicate that it is intended to be an expression of the agreement of the parties to become effectual upon exercise of the option. The circumstance that this option refers to the subsequent *407 signing of a lease between the parties does not, in itself, resolve this point in defendant’s favor.
“ The provision referring to the execution of a more formal lease was not necessary to the constitution of the relation of lessor and lessee * * * but merely pertained to the subsequent execution of an instrument in more extended form and which should express more elaborately the terms and conditions of the contract of leasing then entered into between and binding upon, both parties.” (People v. Saint Nicholas Bank of New York, 3 App. Div. 544, 548, affd. 151 N. Y. 592.)
Sanders v. Pottlitzer Bros. Fruit Co. (144 N. Y. 209) holds that a stipulation to reduce a valid contract to some other form does not affect its validity, and that the stipulation may not be used by either of the parties for the purpose of imposing upon the other additional burdens or obligations, or of evading the performance of the contract. This rule, as applied to a long-term lease, is concisely stated in Mercer v. Payne & Carnaby Co. (110 Neb. 28, 30-31): “ It is further argued that the contract is not enforceable, because it is therein stated the form of the 99-year lease is to be approved by the owner of the fee. This condition relates alone to the approval of the form in which the terms of the lease, as fixed by the parties in their preliminary contract, are to be couched. It does not authorize the lessor to change in any manner the terms on which the minds of the parties met, when they entered into their contract for the lease. The sustaining of the demurrer cannot be justified on this ground.”
The clause in the instrument at bar does not lead to a different result by referring to a lease to be executed as “ containing the above terms and in form satisfactory to the tenant ”. No change is wrought by the use of the word “ and ”. It merely means that the tenant is to approve the form of an instrument embodying the substance of the terms previously stated in the option.
The circumstance has been noted that long-term leases, containing the voluminous clauses which it is fashionable to insert in such contracts, would ordinarily be less succinct than this option. Nevertheless, as stated by McAdam on Landlord and Tenant (Vol. 1, 5th ed., pp. 186-187): “ The law prescribes no unvarying form in which leases shall be made. To make such a contract, there must be a lessor, able to grant the land; a lessee, capable of accepting the grant; and a subject-matter, capable of being granted. No special form of words is necessary to constitute a lease. "Whatever words are sufficient to explain the intent of the parties that the one shall divest himself of the *408 possession, and the other come into it for a determinate time, are of themselves sufficient; and will in construction of law amount to a lease for years as effectually as if the most proper and pertinent words had been made use of for that purpose. If the words made use of are sufficient to prove such a contract, in what form soever they are introduced, or however variously applied, the law calls in the intent of the parties, and models and applies the words so as to make their intention effective.”
In Polner v. Arling (194 Misc. 598, 600) the Kings County Special Term said: “ It is to be noted that the agreement contains a description of the premises to be occupied exclusively by the plaintiff, the amount of rent to be paid, also the period of occupancy. Such an agreement is a valid lease. (1 McAdam on Landlord and Tenant [5th ed.], p. 175; Coyne v. Feiner, 16 N. Y. S. 203; Brooklyn Dock & Term. Co. v. Bahrenburg, 135 App. Div. 799, affd. 202 N. Y. 521.) ”
To the same effect is Pelletreau v. Brennan (113 App. Div. 806) overruled upon a different ground in 300 West End Ave. Corp. v. Warner (250 N. Y. 221, 225).
Although defendant-appellant contends that the brevity of this instrument indicates that substantive provisions were left to future negotiation, and that the option was therefore void under the principle of such decisions as St. Regis Paper Co. v. Hubbs & Hastings Paper Co. (235 N. Y. 30, 36) and Sun P. & P. Assn. v. Remington P. & P. Co. (235 N. Y. 338, 345), such a conclusion involves an assumption that, in signing this option, the parties meant to indulge in an idle ceremony. The circumstance that defendant accepted and retained for over three months the $200 given by plaintiff to bind the option is not conclusive upon the point, but it does suggest that the parties believed that they were doing more than signing a memorandum as an aid to future negotiations. The sum of $200 was hardly large enough to have been designed as a demonstration of plaintiff’s financial responsibility to perform whatever agreements it might make, and this money evidently was paid and accepted when the option was signed on the theory that it was necessary in order to impart to the instrument the legal force and effect which the parties intended that it should possess. Moreover, there would have been no occasion for them to have signed a formal ■ extension of the option if they did not think it was binding.
The referee has found as facts that the parties agreed in the option upon all of the terms and conditions upon which a lease would be made if the option were exercised, that the option agree *409 ment contained all of the essential terms of a lease, was definite and complete, and that approval of the form of the lease by the tenant did not authorize the parties to change the substance of the terms on which their minds had met. These findings of fact would preclude defendant-appellant from succeeding on this appeal even if the option agreement were regarded as ambiguous, since these findings could hardly be reversed as contrary to the evidence if there were conflicting inferences of fact to be drawn from the language of the agreement. We think, however, that appellant’s contentions are excluded as matter of law.
For the purpose of showing that the option agreement was not complete, defendant’s answer enumerates certain substantive provisions which it alleges that the parties intended should have been embodied in any lease growing out of the exercise of the option, but as to which the option is silent, as follows:
“ (1) The amount of security to be deposited by the plaintiff with defendant under said proposed lease. (2) That the said terms [sic] were to be used only exclusively for the storage of fresh meats in refrigerated units to be constructed by the plaintiff at his own cost and expense. (3) That the plaintiff was not to assign the said lease or sublet the whole or any part of the premises covered thereby without the written consent of the defendant. (4) That the plaintiff was to make all necessary repairs to the premises at its own cost and expense. (5) That the plaintiff was to comply with all laws, rules, and regulations of the Federal and State Governments and ordinances of the City of New York. (6) Numerous other terms and conditions usually incorporated in such a lease ”.
In order to make a binding lease it is not necessary that clauses on these subjects shall be included, nor is there evidence in the record that these parties intended to incorporate them in this lease. We shall discuss these alleged omissions separately under the same numbered headings by which they are designated in the answer:
(1) Security does not need to be posted by a tenant in order to render a demise of real property valid and subsisting. Moreover, this option provides that plaintiff-respondent must pay to appellant $30,000 upon the exercise of the option, which both plaintiff’s vice-president and its financial backer testified, without contradiction, was available, and would have been delivered to appellant if appellant had not repudiated its obligation. It is understandable why security was not exacted, in view of the requirement of the absolute payment of this sum at the beginning *410 of the term of the lease. There is no confusion concerning whether the said $30,000 was to have been returned to respondent at the termination of the lease; the instrument states without ambiguity that it was to be an absolute payment as part of the consideration for the lease, and plaintiff-respondent’s counsel conceded at the close of his argument that no obligation is imposed on appellant to restore said $30,000 in any contingency.
(2) There is no requirement that a lease shall set forth the purpose for which demised premises are to be occupied, and if plaintiff were to install refrigeration units so as to render these premises suitable for its own business, as may well have been anticipated, plaintiff would be obliged to defray the cost and expense thereof regardless of a clause to that effect in the lease. The longer the term of a lease is, the greater is likely to be a tenant’s reluctance to limit himself to a restricted use, or to be curtailed in the right to assign or sublet.
(3) It cannot be held that absence of a covenant against assignment or subletting without the written consent of the landlord indicates absence of an intent to contract. Often leases, and particularly long-term leases, do not contain such clauses without which the tenant has, and is expected to have, these rights. In Presby v. Benjamin (169 N. Y. 377, 380) the following comment was made on the subject: ‘‘ It is first to be observed that ‘ such covenants are restraints which courts do not favor. They are construed with the utmost jealousy, and very easy modes have always been countenanced for defeating them.’ (Riggs v. Pursell, 66 N. Y. 193; Taylor on Landlord and Tenant, § 403; McAdain on Landlord and Tenant, § 141.) Thus a covenant not to assign does not prevent an under-letting (Jackson v. Silvernail, 15 Johns. 277), and a covenant not to under-let the premises is not broken by a sub-lease of a part of the premises. (Roosevelt v. Hopkins, 33 N. Y. 81.) ” Failure to include such covenants does not show that the parties lacked the intent to contract, or that their contract was incomplete.
(4) A clause that plaintiff is to make all necessary repairs to the premises at its own cost and expense, while often included, is in large part superfluous, inasmuch as the law casts that burden upon the tenant regardless of such a covenant (Emigrant Industrial Sav. Bank v. 108 W. 49th St. Corp., 255 App. Div. 570, 574, affd. 280 N. Y. 791; Witty v. Matthews, 52 N. Y. 512), except in the instance of what are described as structural or general repairs, in which event courts have been inclined to apportion the burden according to the circumstances of the case, without being controlled entirely by covenants of the kind alleged in the *411 answer (Herald Square Realty Co. v. Saks & Co., 215 N. Y. 427; Zeliner v. Linn, 59 N. Y. S. 2d 654, 656; 1 McAdam on Landlord and Tenant [5th ed.], p. 676). The parties may well have deemed it wise to leave such situations to be decided in court on the facts as they developed, without attempting to anticipate and provide for them in advance. This does not indicate that these parties did not intend to enter into a binding engagement.
(5) The same comments pertain to the absence of a clause relating to compliance with Federal, State and municipal laws, rules and regulations. (Warrin v. Haverty, 159 App. Div. 840; Herald Square Realty Co. v. Saks & Co., supra.)
Failure to mention what is to become of any improvements which might be made to the premises by the tenant presents no problem. If such improvements are made and become part of the real property, they will pass to the owner of the freehold on the expiration of the term of the lease, otherwise not.
The provisions of this lease are set forth over the signatures of both parties; it identifies the real property to be rented, states Avith precision the rental and duration of the lease, and provides that the tenant is to pay taxes and public liabiliy insurance premiums. It also says that the lease will be subject to a $55,000 mortgage and interest. The omission to mention the length of the mortgage, or to distinguish between taxes and assessments, ordinary or extraordinary, does not establish that the minds of the parties failed to meet. Few are the leases in which the incidence of a burden in some contingency is not left to determination by the courts.
No question has been raised, nor does the record show, whether the proposed lease contained in this option would be in xdolation of the emergency rent laws. No decision can be made of this appeal upon such a question.
The demand for judgment in the complaint is that defendant specifically perform the option agreement, and be required to execute and deliver to the plaintiff a lease in accordance with the terms thereof. The judgment, as entered, contains in addition certain injunctive clauses, together with a clause compelling defendant to account and pay over to plaintiff any excess in rents collected from these premises beyond the amount stipulated in the option, in event that defendant refuses to execute a lease in accordance therewith. The latter, and the clauses providing for injunctive relief, should be eliminated. The judgment appealed from should therefore be modified by striking out the second to the fifth decretal paragraphs, inclusive, and as so modified affirmed, Avithout costs. The procedure with respect to *412 the determination of the form of the lease can be provided for upon the settlement of the order.
Cohn and Shientag, JJ., concur with Dore, J.; Van Voorhis. J., dissents in opinion, in which Peck, P J., concurs.
Judgment reversed, with costs. Settle order on notice.