UNITED STATES for Use of SPARLING STEEL CO., Inc. v. SLATER et al.

No. 6670.

District Court, Alaska
Fourth Division, Fairbanks.

March 31, 1953.

Maurice T. Johnson, Fairbanks, Alaska, for use plaintiff.

Collins & Clasby and Walter Sczudlo, Fairbanks, Alaska, for defendant Continental Cas. Co.

Julien A. Hurley, Fairbanks, Alaska, for defendant Robert W. Slater.

PRATT, District Judge.

1.a. Upon the second day of March, 1949, the United States and Robert W. Slater, dba Slater Construction Company, entered into a prime contract in writing, wherein said Slater agreed to construct a garage building at Fairbanks, Alaska, for the use of the Alaska Road Commission, a bureau within the Department of the Interior of the United States, for the sum of $367,600.

The first eight pages of plaintiff's exhibit "J" contain the prime contract and specifications; the next six pages constitute plaintiff's exhibit "I." They show the payment bond except that they show the surety to be The United States Fidelity and Guaranty Company, whereas the undisputed oral testimony and the pleadings show that the defendant, The Continental Casualty Company, is surety.

b. The prime contract specifications provide that if the prime contractor fails to complete the contract within the time specified, the United States can terminate the contract and prosecute the work itself, and the prime contractor and his surety shall be liable to the Government for any excess cost occasioned thereby. It further provides that the right of a contractor to proceed with his work shall not be terminated or the prime contractor charged with liquidated damages because of any delays due to unforeseen causes beyond the control and without the fault or negligence of the prime contractor, including, but not restricted to, acts of God or the acts of another contractor in the performance of a contract with the United States.

c. In the payment bond, plaintiff's exhibit "I," Robert W. Slater is principal, and the Continental Casualty Company is his surety. The Sparling Steel Company, Inc., has no contract with the United States but only with the prime contractor. The total of the sub-contractor's contract is the sum of some twenty-three thousand dollars. Thus, it is seen that the prime contractor is the person with a large sum to lose if the contract is not finished on time. This may explain why the prime contractor bound himself to pay for extras by paragraph 2 of the sub-contract and by the agreement shown by plaintiff's exhibits B to H, inclusive. Article 5 of the prime contract, plaintiff's exhibit "J," provides a possible procedure for the prime contractor to shift the cost of extras to the United States by getting the extra allowed in writing by the contracting officer.

d. It is not shown that the prime contractor even requested the contracting officer to allow any extras for anyone. Such

lack of action upon the part of the prime contractor may have been because the necessity for additions or extras was occasioned by negligence upon the part of the prime contractor.

Article 8 of plaintiff's exhibit "J" is as follows:

"Superintendence by contractor.— The contractor shall give his personal superintendence to the work or have a competent foreman or superintendent, satisfactory to the contracting officer, on the work at all times during progress, with authority to act for him."

That George W. Slater had all the powers of his principal, Robert W. Slater, is shown by the statements of Robert W. Slater to D. H. Sparling, as follows:

"A. He (Robert W. Slater) told me that his brother, George Slater, was going to be in complete charge of all his work in Alaska, he was going to be the project manager.

"Q. Did that include this job? A. It specifically included this job because we had no other definite work with them at that time.

"Q. What, if anything, did he tell you about Mr. George W. Slater's duties or authority so far as the job was concerned? A. He said that any questions that arose concerning the job or any changes or modifications, that George was qualified to take care of them."

Thus, it is shown that both article 8 aforesaid, and the actual directions of Robert W. Slater, authorized his brother to act fully and completely for him, Robert W. Slater.

■ e. Notwithstanding the fact that the sub-contract provided that only extras allowed in writing could be enforced, the rule in law is to the contrary, as follows:

"A written contract may, in the absence of statutory provisions requiring a writing, be modified by a subsequent oral agreement." 17 C.J.S., Contracts, § 377, page 865; note 36.

To the same effect is 12 Am.Jur. 778; Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976; Champion v. Hammer, 178 Or. 595, 160 P.2d 119–123.

■ f. Defendants' exhibits number 1 and number 2 were presented by the Sparling Steel Company, Inc., and allowed and certified to by George W. Slater for his brother, and paid for by Robert W. Slater. Clearly, this shows that George W. Slater and his brother understood and acquiesced in the bookkeeping method of Sparling Steel Company, Inc., in presenting its bills to the Slater Construction Company. Plaintiff's exhibits B to H, inclusive, are made in the same form and duly signed, and thereby allowed, by the Slater Construction Company through the superintendent, George W. Slater. If plaintiff's exhibits B to H, inclusive, do not qualify as extras agreed upon in writing between the parties, they would certainly qualify as an oral contract.

In each of the statements and invoices presented to George W. Slater by the Sparling Steel Company, Inc., there is a summarizing invoice attached to a statement in which it is stated that certain work was performed (describing it) by the Sparling Steel Company, Inc., for the Slater Construction Company at a given price, with the total. The superintendent, George W. Slater, then signed his name under the words, "I hereby certify that the above information is correct." The information given above was that the Sparling Steel Company, Inc., had done certain work for the Slater Construction Company at a certain price, and that the Slater Construction Company was indebted to the Sparling Steel Company in the said sum. That such was the understanding between the parties is shown by the fact that in defendants' exhibits 1 and 2, the same form was used by the Sparling Steel Company, Inc., and paid for by the Slater Construction Company.

■ 2.a. Paragraph 2 of the sub-contract is in the following words:

"That the contractor agrees to pay the sub-contractor for the performance.

of his work as follows: On or before the tenth day of the month for any work performed the previous month in current funds subject to additions and deductions as may be agreed upon in writing, and to make payments on account thereof, the amount allowed to the contractor on account of the sub-contractor's work upon receipt of said payment."

Thus, it is seen that said paragraph 2 contains an agreement in the first part of the paragraph that the contractor will pay the sub-contractor on the tenth of each month for work performed in the previous month, subject to additions and deductions as may be agreed upon in writing. In the second part of said paragraph 2 the prime contractor agrees to make payments to the sub-contractor only in the amount allowed by the Government to the prime contractor on account of the sub-contractor's work, and such payment is stated not to be due to the sub-contractor until the prime contractor receives said payment from the Government.

It is believed that the additions mentioned in the first part of paragraph 2 refer to and include extra work which is beyond the terms of the original sub-contract.

b. In the second part of said paragraph 2, the contractor only agrees to pay the sub-contractor for sub-contractor's work when the Government pays the prime contractor for such work. Thus, the second part of said paragraph 2 is quite repugnant to the allegations contained in the first part of said paragraph.

■ The rule as to repugnant parts of a writing is set forth in 12 Am.Jur., p. 778, Section 243, as follows:

"It has been laid down as elementary law that if two clauses of an agreement are so totally repugnant to each other that they cannot stand together, the first will be received and the latter rejected."

To the same effect are the cases Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976–983; Champion v. Hammer, 178 Or. 595, 160 P.2d 119–123 (13), and Vol. 17 C.J.S. Contracts, § 309, page 727, note 2.

■ 3.a. A builder is entitled to compensation as under an implied contract where the extra work is done with the knowledge of the owner, who is also aware that the builder expects additional pay therefor. 17 C.J.S., Contracts, § 371, pages 845, 850, notes 17, 75.

■ 3.b. Where a modified agreement has been fully executed by one party to such an extent that it would work a fraud upon the other party if repudiated, the modified contract will be sustained. 17 C.J.S., Contracts, § 376, page 863, note 15.

In the instant case the facts bring it within the rules of law mentioned above in paragraphs 3 a and 3 b.

4.a. To determine whether an item is an extra or a part of a contract, it is necessary to examine the provisions of the sub-contract and of the invoices and statements of the Slater Construction Company.

Both George W. Slater and Robert W. Slater authorized plaintiff to build a substation for the Slater Construction Company. It is therefore not in controversy.

■ b. Plaintiff's exhibit C is for unloading cranes from planes. The last sentence of paragraph 1 of the sub-contract states: "All material to be delivered to job site convenient for placing, by others." A clearer statement would be gotten by the transposition of the words, "by others" to immediately follow the word "delivered," so it reads, "all materials to be delivered, by others, to job site, convenient for placing."

c. That George W. Slater approved of the charge for unloading cranes from planes indicates that the sub-contract contemplated the use of the railroad track spur close to the Alaska Railroad Commission property and that it did not contemplate that materials were to be shipped by airplane to an airport many miles from the property of the Alaska Road Commission. Evidently the parties agreed that the ex-

tra time required for taking cranes out of an airplane at the airport warranted the extra price allowed by Mr. George W. Slater.

d. Exhibit D in itself shows that the work is not for contract work. As it is approved by George W. Slater, it is clearly a proper extra.

e. Exhibits E, Sheets No. 1, 2 and 3, and exhibit F, Sheet No. 1, and exhibit H showed charges for installing a hand-railing. This item was approved by George W. Slater and is probably warranted by the statement in the sub-contract in the first part of paragraph 1 to the effect that only miscellaneous ornamental iron which is not bolted or fastened to forms and poured into concrete, such as curb angles, etc., is within the contract, inasmuch as the hand-railing is probably fastened to the forms and poured into concrete.

f. Each of plaintiff's exhibits B to H, inclusive, specifies work which is not covered by the sub-contract. Some of the work mentioned in said exhibits might possibly be mentioned under other wording in the sub-contract, but inasmuch as each of said exhibits was approved by George W. Slater, the inference is warranted that the work mentioned in plaintiff's exhibits is not contract work.

g. The evidence in this case does not show that either defendant performed the matters alleged in his counterclaim or affirmative defense. Neither has any of the assignments of error been sustained by the evidence in this cause.

In paragraph 8 of each defendant's motion for a new trial it is alleged that the court erred in allowing witness fees of $258 to D. J. Sparling.

Attention is called to the fact that defendants did not comply with Sections 55–11–58 and 59 and 55–11–60 A.C.L.A.1949, in that defendants did not file any objections to plaintiff's cost bill; they did not cause the clerk to pass upon objections to said cost bill or appeal to the District Court from the decision of the Clerk of the Court.

Also said costs and disbursements were lawfully and properly allowed.

Therefore the motions for a new trial of each of the defendants should be denied.